UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FAYEZ ABDEL and MARIANNE ABDEL, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )    Case No. 3:06-1192 )    Judge Echols |
| NORTH AMERICAN SPECIALTY INSURANCE COMPANY and LONDON AVIATION UNDERWRITERS, INC. | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM

This is a declaratory judgment action to determine insurance coverage arising out of a June 26, 2006 accident involving the Plaintiffs' airplane which was insured by Defendants. The parties have filed cross-motions for summary judgment (Docket Entry Nos. 19 & 26).

### I. FACTUAL BACKGROUND

In May of 2006, Plaintiff Fayez Abdel ("Abdel") became interested in purchasing a Piper Arrow P-28 R-200, FAA Identification No. N56246 (the "Aircraft"), from Bill Hastings ("Hastings") in Springfield, Tennessee. At the time, Abdel was a student pilot and member of the Aircraft Owner's and Pilot's Association ("AOPA"). He telephoned David Holland ("Holland"), Senior Account Executive of the AOPA Insurance Agency, about obtaining insurance for the Aircraft. All verbal dealings, conversations or negotiations for the insurance involved herein were between Abdel and Holland who had previously negotiated at least 100 policies for London Aviation Underwriters, Inc. and/or North American Specialty Insurance Company.

1

On May 10, 2006, Holland emailed and faxed to Abdel a quote (the "Quote") for insurance coverage for the aircraft, naming London Aviation as the insurance carrier. Because he was a student pilot, Abdel was classified as a "Special Risk" and he consequently was quoted a premium which was substantially higher than that quoted duly licensed pilots.

With regard to piloting the aircraft, the Quote states, in relevant part:

Approved Pilots for Aircraft N56246 with requirements if applicable:
Fayez Abdel who must complete 20 hours of dual flight instruction with a CFI who meets all the requirements of the Open Pilot Warranty; no passenger liability until all requirements are completed; has obtained Private license and logged 40 total hours in make/model.

Any Other Pilots: Private pilots or better with Instrument Rating, 1000 logged flying hours, 100 hours retractable gear, 25 hours make/model, clean record last 5 years, between the ages of 25-65.

(Docket Entry No. 20-2).

On May 23, 2006, Abdel purchased the Aircraft for $60,000. Thereafter, on May 26, 2006, Abdel and his wife, Plaintiff Marianne Abdel, submitted an "Aircraft Insurance Application" (the "Application") for the Aircraft to the AOPA Insurance Agency. Like the Quote, the Application contained provisions relating to the requirements for piloting the aircraft.[1] Specifically, the Application provided:

**Approved Pilots/Occupation**[2]
Fayez Abdel/Contractor

---

[1] Because Abdel was only a student pilot, his instructor would be the "Pilot In Command" or the "PIC" during any instructional flights.

[2] Below Abdel's name in the pilot section were lines which presumably were to be used to list other pilots who might operate the aircraft. No names appear on those lines and, in any event, Defendants knew that Abdel did not list any other pilots as potential operators of the aircraft.
2

Case 3:06-cv-01192  Document 46  Filed 01/28/08  Page 2 of 14 PageID #: 658

> **Additional Pilot Requirement for Fayez Abdel:** Who must complete 20 hours of dual flight instruction with a CFI who meets all the requirements of the Open Pilot Warranty; no passenger liability until all requirements are completed; has obtained Private license and logged 40 total hours in make/model.
>
> **Any Other Pilots:** Private pilots or better with Instrument Rating, 1000 logged flying hours, 100 hours retractable gear, 25 hours make/model, clean record last 5 years, between the ages of 25-65.

(Docket Entry No. 20-3). The Application also stated the "Insurance evidenced by this Application is subject to all the terms, conditions, and limitations of the policy(s) in current use by the insurance company" and that "[t]here is no liability under this application unless the terms, conditions and stipulations herein have been accepted by the insurance company." Plaintiffs signed the Application and in doing so certified that the statements and representations in the application were true and correct, that they understood and agreed with the statements in the Application, and that the Application and the "policy currently in use by the insurers shall be the basis of any contract between the insurance company and . . . us." (Id.)

Defendants claim Holland told Abdel during the application process that, under the terms of the policy as set forth in the Quote, any pilot who operated the Aircraft (other than Abdel but including his instructor) had to meet the minimum requirements of having a pilot's license with an instrument rating and had to have at least 1,000 total logged hours, 100 of which must have been in a retractable gear aircraft, and 25 of which must have been in a Piper Arrow. Defendants also claim Abdel did not ask Holland what any particular term in the Quote meant. Abdel disputes this, claiming he was advised by Holland that the flight instructor from whom he would receive his required flight instruction only needed to be experienced in "the make and model" of the aircraft.

Defendant London Aviation Underwriters, Inc. ("LAU") is an underwriting manager for Defendant North American Specialty Insurance Company ("NAS"). LAU handles claims and all

3

the administrative functions of an insurance department within a company, but as managing underwriter with a contract.

On June 7, 2006 NAS, through LAU, issued an Aircraft Policy No. BZ10006900-00 (the "Policy"), naming the Plaintiffs, Fayez Abdel and Marianne Abdel-Khalik, as insureds. In the Declarations portion, the Policy provides:

> The insurance afforded is only with respect to such of the following coverages as are indicated by a specific premium charge or charges. The limit of the Company's liability against each such coverage shall be as stated herein, subject to all terms of this Policy having reference thereto.

(Docket Entry No. 20-6). After setting forth the liability coverage and limits of liability, the Declaration indicates that the policy provides coverage when the aircraft is used for (1) pleasure and business, and (2) "special uses" which is immediately defined as "instruction to named pilots only." With regard to named "pilots," the declaration reference Endorsement 1 which lists Fayez Abdel as a student pilot and states that "[p]rior to solo in N56246, Fayez Abdel must have completed 20 hours of dual flight instruction in a Piper PA-28R-200 with a Certificated Flight Instructor who meets all of the requirements of the Additional Pilot Clause." (Id.) The Declaration also contains an Endorsement which defines "Additional Pilot Clause" as "[a]ny pilot, aged between 25 and 65, having a Private (or better) Pilot Certificate with a Single-Engine Land and Instrument Rating who has flown a minimum of 1,000 total flying hours as Pilot in Command, 100 hours of which shall be in Retractable Gear Aircraft, including 25 Hours in the make and model insured hereunder, and who has had no accidents, incidents, violations, or suspensions within the last five years, and who has the insured's full approval and consent." (Id.)

The Policy also contains exclusions. One exclusion denies coverage "when the aircraft is operated by persons who are not named in the Pilot Section of the Policy, or, who do not meet the

4

requirements of the Additional Pilot Clause, if applicable; or when the aircraft is operated by any pilot who has not passed a proficiency test per the requirement of FAR 61.56 within the past 24 months or is not in possession of a current and valid Medical Certificate or is not certified for the make and model being flown and currently rated for the flight involved." (Id.).

At the end of the Policy is a Footnote which reads:

> The Insured having made to the Company written application, a copy of which is attached hereto, which together with the particulars and statements contained therein, it is hereby agreed is the basis of this contract and is to be considered incorporated herein. However, it should be noted that in the event of conflict between anything appearing in the Application and the terms, conditions, exclusions, and limit(s) of indemnity expressed in this Policy, THE TERMS, CONDITIONS, EXCLUSIONS AND LIMIT(S) OF INDEMNITY EXPRESSED IN THIS POLICY SHALL APPLY.

(Id., capitalization in original).

Defendants argue "[o]ne of the conditions of coverage under the Policy was that Mr. Abdel continue his flight instruction and obtain 20 hours of dual instruction with a Certified Flight Instructor "CFI", as long as the CFI met the policy's Open Pilot Warranty." (Def. SOF ¶ 11). Defendants also assert "[t]he term "Open Pilot Warranty" and the acronym "OPW" are terms of art used in the insurance industry, just like the term "Omnibus Insurance Clause" or any other term of art in insurance. (Id. ¶ 12). Defendants further assert that "[i]n order to meet one of the conditions of the Policy's Open Pilot Warranty, the individual must have logged 1,000 hours of time as Pilot-in-Command, 100 hours of time in an aircraft with retractable gear, 25 hours in the manufacturer and specific model of the Aircraft insured under the policy." (Id. ¶ 13).

Prior to the incident in question, Abdel flew the aircraft on only a handful of occasions, all times accompanied by a licensed pilot. He attended ground school and aviation training at the

Springfield, Tennessee airport. One of his instructors was Kaul Mitchell Wilson II ("Wilson"), who Abdel knew to be 21 years old.

On June 25, 2006, Abdel went to the Nashville International Airport with his brother, Mohammad Abdel-Khalik ("Abdel-Khalik"). Abdel-Khalik was scheduled to self-report on June 26, 2006 to the Moshannon Valley Correctional Facility in Philipsburg, Pennsylvania to serve a term of imprisonment for passport fraud. Abdel-Khalik was scheduled to fly Delta Airlines to College Station, Pennsylvania, however the flight was cancelled. Abdel called Wilson to ask him if he could fly Abdel and his brother to Pennsylvania.

Wilson agreed to fly the Aircraft from Springfield, Tennessee to Pennsylvania and asked if his friend, Justin Hughes, could accompany them on the flight. Abdel had no objection.

Prior to the flight involved herein, Abdel performed fuel calculations for the trip and a pre-flight inspection. Abdel carried with him on the flight his flight bag and training manuals. Wilson told Abdel that, because of the weather conditions, Abdel could obtain "instrument training" in connection with the flight to and/or from Pennsylvania.

Late in the evening on June 25, 2006, the Aircraft departed Springfield, Tennessee en route to Pennsylvania. This was Wilson's first flight in the aircraft, although he had previously piloted another Piper aircraft owned by his uncle.

Wilson sat in the front left seat as the pilot-in-command. Hughes sat in the front right seat. Abdel sat in the right rear seat and his brother sat next to him in the left rear seat. On the return trip, Abdel was to sit up front to obtain dual instruction time.

During the flight, Abdel fell asleep. He was awakened twice, the last time when his brother asked him if it was normal for the plane to be shuddering. Abdel looked at the fuel gauge and

6

noticed that it was almost on empty. Shortly thereafter, the plane crashed into a wooded area.

Wilson was killed in the crash. Abdel, Abdel-Khalik and Hughes were seriously injured. At the time of the crash, the Aircraft was being operated for "business" or "pleasure" within the meaning of the Policy.

The last entry in Wilson's Pilot Log Book indicates he had 576.7 total logged hours. He was a Certificated Flight Instructor by the Federal Aviation Administration and had multiple certificates and ratings, including a Commercial Pilot Certificate, Single and Multiple Engine ratings, and an instrument rating. At the time of the crash, Wilson possessed a valid Second Class Medical Certificate.

As a result of the crash, Plaintiffs' counsel wrote Defendants, notifying them of the loss and demanding coverage. Defendants responded with a Reservation of Rights and Non-Waiver letter, reserving all rights to determine if coverage existed and to deny coverage pending the completion of their factual investigation. Thereafter, on November 13, 2006, Plaintiffs filed a Complaint for Declaratory Judgment in the Chancery Court for Sumner County, Tennessee seeking a declaration that they are entitled to $60,000 for hull coverage under the Property Damage provisions of the Policy, and to indemnity, including a defense (and representation) for any claims which may be brought against them as a result of the accident.

Defendants removed the action to this Court on December 14, 2006. Defendants deny that coverage exists under the Policy for the accident or that Plaintiffs are entitled to indemnity, including a defense (and representation) for any claims which may be brought against them as a result of the accident. Defendants ask the Court to determine and declare the rights and other legal

relations of all interested parties under the terms of the Policy. The cross-motions for summary judgment followed.

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

8

### III. LEGAL ANALYSIS

**A. General Law Applicable To Insurance Contracts in Tennessee**[3]

"Insurance contracts are subject to the same rules of construction and enforcement as apply to contracts generally." McKimm v. Bell, 790 S.W.2d 526, 527 (Tenn. 1990). As a result, "disputed contractual language must be examined in the context of the entire agreement" and the policy "'construed as a whole in a reasonable and logical manner.'" Cobb v. Stewart Title Guar. Co., 2007 WL 4460198 at *2 (Tenn. Ct. App. 2007)(citations omitted). Further, "words must be given their usual and ordinary interpretation." Id. "The goal is to ascertain and enforce the intent of the contracting parties." VanBebber v. Roach, 2007 WL 2790698 at *4 (Tenn. Ct. App. 2007). Hence, where "a policy's terms are unambiguous, it will be enforced as written," and a "court cannot rewrite an unambiguous policy simply to avoid harsh results." Holt v. Pyles, 2007 WL 1217264 at *5 (Tenn. Ct. App. 2007).

"When coverage questions arise, the courts should consider the components of an insurance policy in the following order: (1) the declarations, (2) the insuring agreements and definitions, (3) the exclusions, (4) the conditions, and (5) the endorsements." Massachusetts Mut. Life Ins. Co. v. Jefferson, 104 S.W.3d 13, 320 (Tenn. Ct. App. 2002). "Therefore, the insured cannot simply focus on the declarations/summary portion of a contract in isolation; the policy must be read as a whole." Holt, 2007 WL 1217264 at *5.

---

[3]This is a diversity action and therefore the Court looks to Tennessee law to determine which state's substantive law applies. "In contract actions, Tennessee follows the rule of *lex loci contractus*, which means simply that the law of the place where the contract is made governs the construction and validity of the contract." Thompson v. American General Life and Acc. Ins. Co., 448 F.Supp.2d 885, 887 (M.D. Tenn. 2006). Here, Plaintiffs signed the insurance application in Tennessee and the Quote and Policy were delivered in Tennessee. Tennessee law therefore governs, and the parties do not argue otherwise.

9

While insurance policies are construed as contracts, "courts do not shut their eyes to realities; they know that the policy is a contract of 'adhesion,' i.e. not one which the parties have reached by mutual negotiation and concession, not one which truly expresses any agreement at which they have arrived, but one which has been fixed by the insurer and to which the insured must adhere, if he chooses to have insurance[.]" Alcazar v. Hayes, 982 S.W.2d 845, 851-52 (Tenn. 1998). Accordingly, insurance policies are construed in favor of the insureds and "so as to provide coverage." Id. at 853.

**B. Application of Law to Pending Cross-Motions for Summary Judgment**

In moving for summary judgment, Defendants characterize the essential issue to be decided as follows:

> There is no dispute concerning the central material fact of this case: Kaul Mitchell Wilson II, who was piloting the Plaintiffs' airplane with the Plaintiffs' permission at the time of this single plane aviation accident, did not meet the Policy's "Additional Pilot Clause" age and experience requirements. The issue to be decided by the Court in ruling upon the Plaintiffs' and the Defendants' respective Motions For Summary Judgment, then, is straightforward: Does Plaintiffs' non-compliance with the Policy in permitting Mr. Wilson to fly their aircraft preclude coverage for the accident and excuse the Defendants from having to provide a defense to the Plaintiffs for any claims, lawsuits, or other legal proceedings or actions against them arising out of this accident?

(Docket Entry No. 33 at 1-2).

It seems clear from the evidence before the Court that, at the time of the accident in question, Wilson did not meet the "Additional Pilot Requirement." That requirement allowed pilots who had logged 1000 flying hours, 100 of which was in a retractable gear aircraft and 25 hours which was in the make and model of the aircraft, to pilot the plane. However, the Court cannot conclude on the basis of the present record that this is the provision which is controlling.

10

The Quote and the Application both reference similar requirements for "additional pilots." However, they also indicated that, because Abdel was not yet a licensed pilot and it was contemplated that he be trained in the aircraft, Abdel could receive "dual flight instruction with a CFI who meets all the requirements of the Open Pilot Warranty." (Docket Entry Nos. 20-2 and 20-3). "Open Pilot Warranty" is not defined and while Defendants characterize that phrase as a "term of art in the industry" and equate that phrase with the "Additional Pilot Requirement," it has provided nothing to the Court which would establish that "Open Pilot Warranty" is in fact a term of art which requires that the training pilot meet the "Additional Pilot Requirement."

This lack of proof is compounded by the fact that both the Quote and the Application have provisions for pilots while Abdel is in training (that is, a pilot who meets the requirements of the "Open Pilot Warranty") and "any other pilots" (that is, private pilots at least 25 years of age who have logged 1,000 hours). Thus, the Quote and the Application appear to make a distinction between the requirements for the additional insured pilot depending, upon whether the pilot was acting as an instructor for Abdel, or simply piloting the aircraft.[4]

Further, Defendants' own Rule 30(b)(6) corporate designee testified that the insurers understood that while obtaining his dual instruction, Abdel could fly with a Certificated Flight Instructor who met the "Open Pilot Warranty." (Sutton Depo. at 17). Again, this Court cannot accept, for summary judgment purposes, the conclusory assertion that the "Open Pilot Warranty" requirement equates with the "Additional Pilot Clause."

---

[4]In their response in opposition to Plaintiffs' Motion for Summary Judgment, Defendants concede "[t]he Quote, the Policy Application, the declarations exclusion, the insuring agreements, the exclusions, and the endorsements are integral parts of the contract of insurance between the Plaintiffs and the Defendants." (Docket Entry No. 33 at 5).

11

In reaching this conclusion, the Court is aware of Defendants' arguments relating to the fact that the Policy which was ultimately issued indicates that even when receiving dual flight instruction, the Certificated Flight Instructor must meet "all of the requirements of the Additional Pilot Clause." The Court is also aware the Sixth Circuit in <u>North American Specialty Ins. Co. v. Myers</u>, 111 F.3d 1273, 1278 (6th Cir. 1997), applying Michigan law, stated that, as a general proposition, "the terms and conditions of such a temporary contract of insurance are those of the policies ordinarily used by the insurance company to cover similar risks, such as terms and conditions relating to cancellation, limitation of actions, and proof of loss." However, it does not appear that case involved alleged statements made by the insurer's agent regarding who could pilot the plane and the court in <u>North American</u> noted that ordinary provisions and exclusions will be read into the temporary contracts of insurance unless there was an express agreement at the time "which would make such provisions and exclusions inconsistent with the intent of the binder agreement." <u>Id</u>. (citation omitted).

Here, Abdel claims that when he received the Quote from Holland he called Holland to discuss it. During the discussion, Holland told him that he had to have 20 hours with a certified instructor in the plane and that the certified instructor only had to have flown the same make and model of aircraft. Holland also allegedly stated that most instructors would meet the requirement for the make and model of aircraft. (Abdel Depo. at 61-64). Subsequently, after talking with one of his flight instructors, Abdel called Holland to ask if his instructors should be listed as additional pilots on the application. Holland allegedly told Abdel no "because that way you have the option, in case you decide to go to a different instructor, you don't have to worry about the paperwork." (<u>Id</u>. at 64). In response, Defendants point out that Holland testified he told Abdel "[t]hat any other

12

pilots who may operate the aircraft, other than him and including his instructor, must meet these minimum requirements: Private pilot or better with an instrument rating, must have logged 1,000 total logged hours, 100 of which must have been in a retractable gear aircraft and 25 of which must be in a Piper Arrow." (Holland Depo. at 99). Clearly what Holland said or did not say present factual questions which can only be resolved by credibility determination.

Given the foregoing, the Court concludes factual issues exist which preclude summary judgment in favor of Defendants. The Court further concludes that other factual questions exist which preclude summary judgment for the Plaintiffs.

Plaintiffs concede that in light of his age and experience, Wilson did not meet the "Additional Pilot" requirement of the policy. In their brief, however, Plaintiffs assert that Wilson was acting as Abdel's flight instructor and therefore the more stringent Additional Pilot requirements did not apply to Wilson in his role as a flight instructor. However, Plaintiffs' argument presupposes that Wilson was acting as a flight instructor during the ill-fated trip to Pennsylvania.

Plaintiffs have pointed to some evidence which would suggest that the flight to Pennsylvania was a training flight. Prior to take-off Abdel performed fuel calculations for the trip and conducted a pre-flight inspection of the aircraft. Abdel took his flight bag and training manuals with him on the trip. Wilson allegedly informed Plaintiff that, because of the poor weather in Pennsylvania, Wilson would be flying by instrument and therefore, Abdel could obtain instrument training.

There is other evidence which could establish that the flight in question was not actually a training flight. For example, contrary to what appears to be the normal custom, Abdel was not sitting in the right front seat (which has dual controls) when he was allegedly receiving instructions but instead was in the right rear seat. During the flight, Abdel fell asleep on at least two occasions.

13

In a "Statement of Events" drafted after the accident, Abdel stated that he "was to sit up front for the return flight and obtain dual instruction time," (Docket Entry No. 20-8 at 1), suggesting that the flight <u>to</u> Pennsylvania may not have been a training flight.

Clearly there are factual disputes as to whether the flight in question was a training flight. Accordingly, summary judgment will not be granted in favor of the Plaintiffs.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion for Summary Judgment (Docket Entry No. 19) will be denied. Plaintiffs' Motion for Summary Judgment (Docket Entry No. 26) will also be denied.

An appropriate Order will be entered.

*[signature]*

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE